**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, CONCORD MUSIC GROUP, INC., and CONCORD BICYCLE ASSETS, LLC, | |
| Plaintiffs, | CIVIL ACTION NO. 2:22-CV-471-JRG |
| v. | ███████████████ |
| ALTICE USA, INC., and CSC HOLDINGS, LLC, | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE
TO THE EASTERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

I.    Introduction ........................................................................................................... 1

II.   Legal Standard ..................................................................................................... 2

III.  Analysis................................................................................................................ 3

   A.    The Private Interest Factors Disfavor Transfer .......................................... 3

      1.   The Willing Witnesses Factor Strongly Disfavors Transfer ...................... 3

      2.   Ease of Access to Sources of Proof Disfavors Transfer ............................ 8

      3.   The Availability of the Compulsory Process Favors This District ........................... 10

      4.   Other Practical Considerations Favor This District ................................... 11

   B.    The Public Interest Factors Heavily Favor This District .......................... 11

      1.   This District Has A Strong Interest in this Case ........................................ 11

      2.   The Balance of Court Congestion Heavily Favors This District ................................ 14

      3.   The Familiarity of the Forum with Relevant Law Disfavors Transfer ...................... 14

      4.   The "Conflict of Laws" Factor is Neutral ................................................. 14

IV.  Conclusion .......................................................................................................... 14

Certificate of Service ................................................................................................ 16

Certificate of Authorization to File Under Seal ........................................................ 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACQIS LLC v. EMC Corp.*,
  67 F. Supp. 3d 769 (E.D. Tex. 2014) ...................................................................................9

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
  No. 2:12-CV-572-JRG, 2017 WL 3193260 (E.D. Tex. July 26, 2017)...............................8, 9

*ComCam Int'l, Inc. v. Mobotix Corp.*,
  No. 2:13-CV-00798-JRG, 2014 WL 4229711 (E.D. Tex. Aug. 26, 2014)........................5, 11

*Def. Distributed v. Bruck*,
  30 F.4th 414 (5th Cir. 2022) .............................................................................................3

*Enovsys LLC v. T-Mobile USA, Inc.*,
  No. 2:21-CV-00368-JRG, 2022 WL 2161028 (E.D. Tex. June 14, 2022) ............................7

*Implicit, LLC v. Trend Micro, Inc.*,
  No. 6:16-CV-00080-JRG, 2016 WL 9245067 (E.D. Tex. Sept. 1, 2016) ..............................3

*N5 Techs., LLC v. Bank of Am., N.A.*,
  No. 2:12-CV-685-MHS-RSP, 2014 WL 558762 (E.D. Tex. Feb. 10, 2014) ........................14

*In re Planned Parenthood Fed'n of Am., Inc.*,
  52 F.4th 625 (5th Cir. 2022) ...............................................................................2, 8, 9, 10

*Realtime Adaptive Streaming LLC v. Amazon.com, Inc.*,
  No. 6:17-CV-00549-JRG, 2018 WL 4444097 (E.D. Tex. Sept. 5, 2018) ............................11

*SynQor, Inc. v. Ericsson Inc.*,
  No. 2:11-CV-54-DF, 2012 WL 12903079 (E.D. Tex. Feb. 6, 2012) ...................................14

*Uniloc USA, Inc. v. Distinctive Dev. Ltd.*,
  964 F. Supp. 2d 638 (E.D. Tex. 2013) ...............................................................................14

*Viavi Sols. Inc. v. Zhejiang Crystal-Optech Co.*,
  No. 2:21-CV-00378-JRG, 2022 WL 16856099 (E.D. Tex. Nov. 10, 2022)................... *passim*

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) .............................................................................2, 3, 5, 11

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) .............................................................................................2

**Statutes**

28 U.S.C. § 1404(a) ..................................................................................................................2, 8

## I.      INTRODUCTION

Venue discovery confirmed that Altice's proposed transferee district—the Eastern District of New York—is clearly *not* a more convenient forum. Relevant personnel for the Plaintiffs are overwhelmingly based in Los Angeles and Nashville, where each plaintiff group has substantial operations. Moreover, the non-parties who are expected to be heavily involved in this case are on the West Coast and far closer to Marshall than to New York. No potentially relevant non-parties are in New York. While Altice is based in New York, venue discovery has revealed that there are several critical witnesses based in Missouri, Texas, and even Egypt. As for documents, venue discovery has established that nearly all, if not all, documents in this case are electronic; thus, the location of documents is not a meaningful factor in the venue analysis.

All parties, with the exception of the Concord plaintiffs, have employees in Texas. For its part, Altice is one of the largest employers in Tyler, Texas and is in the midst of a $500 million business expansion in Texas where it earned over ███████ in revenue over the last four years— the third largest state in its business footprint, just behind New York and New Jersey. Altice has ███████ subscribers in Texas, 189,000 of which are located in this District. And, as alleged in the Complaint, the tort of copyright infringement has been committed in Texas and this District using Altice's services. Thus, Texas plainly has an interest in the resolution of this case.

Other relevant factors weighing against transfer are the fact that this Court would likely address Plaintiffs' claims a full two years before the Eastern District of New York and the fact that this Court is highly skilled in handling complex intellectual property litigation. All but one of the relevant factors weighs against transfer, and the lone remaining factor is neutral.

| Private Interest Factors | | Public Interest Factors | |
|---|---|---|---|
| Willing Witness | Disfavors Transfer | Local Interest | Disfavors Transfer |
| Access to Proof | Disfavors Transfer | Court Congestion | Disfavors Transfer |
| Compulsory Process | Disfavors Transfer | Familiarity with Law | Disfavors Transfer |
| Other Considerations | Disfavors Transfer | Conflict of Laws | Neutral |

Altice has not and cannot meet its burden to show that the Eastern District of New York is "clearly more convenient than the venue chosen by the plaintiff." It is not. Plaintiffs' choice of venue should not be disturbed, and Altice's transfer motion should be denied.

## II.   LEGAL STANDARD

In evaluating a motion to transfer under 28 U.S.C. § 1404(a), "the party seeking transfer must clearly establish good cause for transfer based on convenience and justice." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022) (quotations and citation omitted). "The ultimate inquiry is whether the destination venue is 'clearly more convenient than the venue chosen by the plaintiff.'" *Id.* (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*")). "Absent such an elevated showing, plaintiff's choice of venue must be respected." *Viavi Sols. Inc. v. Zhejiang Crystal-Optech Co.*, No. 2:21-CV-00378-JRG, 2022 WL 16856099, at *3 (E.D. Tex. Nov. 10, 2022); *see Volkswagen II*, 545 F.3d at 315.

A transfer motion is evaluated using a two-step analysis that considers both private interest factors and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.* The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the interest in having localized disputes decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance

of unnecessary problems of conflict of laws. *Id*. This list of factors is not exhaustive, and no one factor is dispositive. *Planned Parenthood*, 52 F.4th at 630.

In addressing a transfer motion, "the Court may consider undisputed facts outside of the pleadings, such as affidavits or declarations, but [it] must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Viavi Sols.*, 2022 WL 16856099, at *3 (citation omitted). As discussed below, the private and public interest factors overwhelmingly disfavor transfer. Altice's motion to transfer venue should therefore be denied.

## III.   ANALYSIS

### A.   The Private Interest Factors Disfavor Transfer

In evaluating the private interest factors bearing on transfer, "[s]ome inconvenience is expected and acceptable," but "the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). As discussed below, Altice fails to meet its high burden to show that EDNY would be "clearly more convenient" than this District. *Id.* (quoting *Volkswagen II*, 545 F.3d at 315). In fact, venue discovery has shown that Altice's motion omits or mischaracterizes many key details that bear on the analysis.

#### 1.   The Willing Witnesses Factor Strongly Disfavors Transfer

"The convenience of the witnesses is probably the single most important factor in the transfer analysis." *See Implicit, LLC v. Trend Micro, Inc.*, No. 6:16-CV-00080-JRG, 2016 WL 9245067, at *3 (E.D. Tex. Sept. 1, 2016) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (applying Fifth Circuit law)). "[T]he convenience of party witnesses is given little weight . . . ." *Viavi Sols.*, 2022 WL 16856099, at *9 (citing cases). Instead, the analysis focuses on the convenience of *non*-party willing witnesses. *Id.* The convenience for willing witnesses is directly proportional to the additional travel distance required if the proposed venue is more than

100 miles from the existing venue. *Volkswagen I*, 371 F.3d at 204–05.

The vast majority of non-party witnesses are located closer to this District than to EDNY, as are Plaintiffs' witnesses. Moreover, many of Altice's *own* key relevant witnesses reside closer to this forum than to EDNY. The convenience of willing witnesses overwhelmingly favors remaining in this District.

### a.      Convenience of Non-Party Witnesses

As Altice acknowledges, Plaintiffs expect to rely on evidence from third parties, likely to include Rightscorp and OpSec[1], to provide evidence of direct infringement by Altice's subscribers. Mot. at 6, 11. Those companies maintain systems that detect copyright infringement via BitTorrent and inform Altice when they detect infringement by one of Altice's subscribers. Compl. ¶¶ 34, 39–43; Declaration of Michael J. Allan ("Allan Decl.") ¶ 9 & Ex. 9 ("BMG Dep.") at 69:17–70:5, 89:3–20; *id.* ¶ 11 & Ex. 13 ("UMG Dep.") at 90:2–8, 91:10–25. Fully aware that these third parties play an important role in this case that is detrimental to their transfer motion, Altice attempts to downplay their importance. Mot. at 13. But these non-party infringement-detection companies provide technical evidence of Altice's infringement. Altice will undoubtedly spend significant time during discovery focused on these non-parties, and at trial. One need not look further than the trial of a similar case tried in Austin, Texas in the Fall of 2022. In that case, the defendant internet service provider mentioned Rightscorp more than 150 times in their opening statement and more than 80 times in their closing statement, and Rightscorp's technical witness was on the stand for multiple hours over two days. Allan Decl. ¶ 16 & Exs. 21–22.[2]

As Altice concedes, none of the likely non-party witnesses are based in New York. Mot. at 6. Rightscorp is a Nevada company, and its system developer, Greg Boswell, is based in Ventura,

---

[1] OpSec acquired MarkMonitor's antipiracy business in 2020. Allan Decl. ¶ 17 & Ex. 27.
[2] OpSec was not involved in that case.

California (near Los Angeles). *Id.* Allan Decl. ¶¶ 8, 14 & Ex. 8 at 16 & Ex. 18. Similarly, OpSec's online anti-piracy services are used by some Plaintiffs, and OpSec's employees are based in Meridian, Idaho. Allan Decl. ¶¶ 10, 17 & Ex. 11 at 22–23 & Exs. 23–27. Witnesses from both Rightscorp and OpSec have testified in prior similar cases. Allan Decl. ¶¶ 15–16 & Exs. 19–22. ████████████████████████████████████████████. Allan Decl. ¶¶ 18–20 & Ex. 28 at 3, Ex. 29 at 7, Ex. 30 at 4.

This District would be more convenient for those witnesses. Los Angeles and Meridian, Idaho are both substantially closer to this District than to EDNY (1,086 miles and 744 miles, respectively). Allan Decl. ¶¶ 21–22 & Exs. 31–34. The inconvenience to Rightscorp's and OpSec's witnesses is directly proportional to that increased distance between Texas and New York. *Volkswagen I*, 371 F.3d at 204–05. Direct flights from Los Angeles to Shreveport, Louisiana, are available for just $76—a faster and less expensive option than flying to New York. Allan Decl. ¶¶ 23–25 & Exs. 35–39; Elkin Decl. ¶ 36 & Ex. 61. Travel time from Idaho is also shorter. Allan Decl. ¶¶ 25–26 & Exs. 37–42; Elkin Decl. 40 & Ex. 68. The cost for lodging and food in this District is also significantly lower than in EDNY. *See ComCam Int'l, Inc. v. Mobotix Corp.*, No. 2:13-CV-00798-JRG, 2014 WL 4229711, at *3 (E.D. Tex. Aug. 26, 2014) (Given that non-party witnesses will be required to travel for trial, "expenses as related to both meals and lodging will be unarguably and substantially higher in New York City, than in Marshall, Texas"); Allan Decl. ¶ 27 & Exs. 43–44. The convenience to the willing non-party witnesses that Plaintiffs cited alone favors this District.[3]

---

[3] The other non-parties Altice referred to do not support its motion. To the extent Audible Magic is relevant, that company and its employees are based in Los Gatos, California, not New York. Mot. at 6 (citing Elkin Decl. ¶ 14). Non-party RIAA is based in Washington, DC, not New York. Allan Decl. ¶ 10 & Ex. 11 at 23. And, Altice does not explain the relevance of any witnesses from the Center for Copyright Information ("CCI"). Mot. at 6.

Altice also ignores relevant non-parties (none of whom are in New York) who will likely have significant information regarding Altice's current and past systems for handling copyright infringement notices—a central issue in this case. *See* Compl. ¶¶ 44–49, 58, 66–67. Two former employees of Altice with knowledge of Altice's handling of copyright infringement notices in its Suddenlink footprint from mid-2019 and earlier both reside closer to this District. ████████

████████████████████████████ Allan Decl. ¶¶ 2, 7 & Ex. 1 at 12 & Ex. 6 ("Clarke Dep.") at 52:9–54:15, 173:5–174:12; *see also id.* at 69:16–70:13. ████████████████████

████████████████████████████████████████████████

████████████████████████. Clarke Dep. at 177:14–179:1. ██████████████████

████████████████████████████████████████████████

████████████ Clarke Dep. at 55:24–56:11. ████████████████████████

████████████████████████████████████████████████

Clarke Dep. at 55:10–14, 56:12–18, 50:13–60:25, 176:25–177:2. Altice also failed to mention

████████████████████████████████████████████████

████████████████████████████ Clarke  Dep.  at  24:14–17  ("█

████████████████████████████."), 136:18–23 (noting ████████

████████████████) *see also id.* at 43:3–7, 51:2–5, 65:5–17, 75:3–11. ████

████████████. Allan Decl. ¶¶ 2 & Ex. 1 at 20. To the extent ████████████

████████ are willing to serve as witnesses, this forum is much closer than EDNY and less expensive. Allan Decl. ¶ 28 & Exs. 45–48; *supra* at 5. The locations of these potential non-party witnesses weigh decidedly against transfer.

> ### b.   Convenience of Altice's Witnesses

Even though Altice has some witnesses based in New York, their convenience is given

little weight. *See Viavi Sols.*, 2022 WL 16856099, at *9. In any case, venue discovery has revealed that Altice has several relevant witnesses who are not based in New York and who reside substantially closer to this District. Lisa Farrell, Director of Customer Experience Design, for example, works remotely from Florida. Mot. at 9 n.4. And Dan Drysdale, Altice's VP and Chief Information Security Officer, is located in Missouri. Mot. at 9 n.6. Both appear likely to be key witnesses on Altice's implementation of processes for handling copyright-infringement notices. Drysdale "███████████████████████████████████████████████████
███████████████████████████████████████. Clarke Dep. at 146:21–147:5; *see also id.* at 45:1–9. Farrell ███████████████████████████████████████████████
███████████████████████. *Id.* at 151:22–152:13, 155:12–157:4. Drysdale and Farrell reside closer to this District and would require 66 and 390 more miles of travel to EDNY, respectively, plus additional expenses. Allan Decl. ¶¶ 28–29 & Exs. 45–50; *supra* at 5.

The convenience to Altice's witnesses, therefore, does not favor transfer.

### c.    Convenience of Plaintiffs' Witnesses

Plaintiffs chose to litigate in this District and thus do not find it to be inconvenient; any contrary argument by Altice is factually wrong but also has no bearing on the transfer analysis. *Enovsys LLC v. T-Mobile USA, Inc.*, No. 2:21-CV-00368-JRG, 2022 WL 2161028, at *5 (E.D. Tex. June 14, 2022) ("the Court affords no weight" to arguments that plaintiff's chosen venue would be inconvenient for its own witnesses). In any event, this District is closer for the bulk of Plaintiffs' anticipated witnesses compared to EDNY. For example, seven of the eight employees UMG identified as having knowledge of what Altice considered "Relevant Issues"[4] are based in

---

[4] In its venue discovery requests, Altice defined the term "Relevant Issues" to, generally include four issues: (1) copyright ownership; (2) revenue and financials; (3) copyright infringement/ enforcement efforts; and (4) document/data storage. Allan Decl. ¶ 36 & Ex. 63 at 4–5. Plaintiffs

California, which is also home to UMG's headquarters, and there are over ████ UMG employees in California. Allan Decl. ¶ 10 & Ex. 11 at 9–14, 17–19; Ex. 13 ("UMG Dep.") at 25:19–26:2, 26:20–27:20, 30:12–24. Five out of six of the employees BMG identified are based in either Los Angeles or Nashville, which is also home to nearly all of BMG's ████████████. Allan Decl. ¶ 8 & Ex. 8 at 8–12; BMG Dep. at 29:24–31:4; 69:4–16. All five of the employees Concord identified are based in Nashville, which is also home to Concord's headquarters, ████████████████████████. Allan Decl. ¶¶ 12–13 & Ex. 14 at 7–8, Ex. 15 at 8, Ex. 17 ("Concord Dep.") at 83:17–86:11.[5]

For many of Plaintiffs' potential witnesses, Los Angeles is closer to this District than to EDNY, with direct flights available from Los Angeles to Shreveport, Louisiana. *Supra* at 4–5. Nashville is also closer to this District than to EDNY. Allan Decl. ¶ 30 & Exs. 51–52. In all, the proximity of Plaintiffs' witnesses to this District coupled with Plaintiffs' decision to litigate here also disfavors transfer.

### 2.    Ease of Access to Sources of Proof Disfavors Transfer

The relative ease of access to sources of proof, specifically focused on documents and other physical evidence, is a consideration under Section 1404(a). *Viavi Sols.*, 2022 WL 16856099, at *6. This factor recedes in importance where "the vast majority of the evidence [is] electronic, and therefore equally accessible in either forum." *Planned Parenthood*, 52 F.4th at 630. This is because this factor is analyzed "in light of the distance that . . . evidence, must be transported from their existing location to the trial venue." *Archer & White Sales, Inc. v. Henry Schein, Inc.*, No. 2:12-

---

objected to and dispute that each of these issues would be relevant to the merits, but nevertheless identified witnesses as Altice requested.

[5] Capitol Records, LLC and Concord Bicycle Assets, LLC ████████████. Allan Decl. ¶¶ 10, 12 & Exs. 12, 16.

CV-572-JRG, 2017 WL 3193260, at *2 (E.D. Tex. July 26, 2017) (citation omitted).[6]

      Discovery in this case is likely to focus on several categories of information, virtually all of which will be digital, as Altice concedes. Mot. at 4 (citing Heberer Decl. ¶ 11).[7] Altice's evidence is "█████████████████████████████████████████. Clarke Dep. at 19:7–20:15; *see also id.* at 23:6–13, 23:25–24:7, 83:3–85:1, 86:12–87:11. This evidence will include, for example, Altice's policies, systems, and procedures for handling infringement notices and how and why certain actions are taken (or not) with respect to Altice's infringing subscribers; customer-retention information; marketing information, and more. Altice has not identified any relevant physical evidence in its motion, ████████████████████████████ ██████████████. *Id.* at 90:24–92:5. The proffered locations of Altice's evidence thus do not warrant transfer. *See Viavi Sols.*, 2022 WL 16856099, at *9 (movant "failed to identify any *physical* evidence in [transferee district] which would warrant transfer"); *Planned Parenthood*, 52 F.4th at 630. The bulk of Plaintiffs' evidence (and that from third parties) is also digitally stored and will be produced in like form. Allan Decl. ¶¶ 8, 10, 12 & Ex. 7 at 10–11, Ex. 10 at 12–13, Ex.

---

[6] Altice's motion conflates the ease of access to sources of proof (i.e., documents and physical evidence) with the location of possible *witnesses* and possible travel itineraries. *See Archer & White Sales*, 2017 WL 3193260, at *2 n.1. Altice's citation of the "100 mile rule" under this factor is also misplaced. *Id.* at *3.

[7] Altice vaguely refers to information stored on physical servers based in New York. Heberer Decl. ¶ 11. But Altice does not explain whether that information is relevant or how its storage on physical servers bears on the convenience of the forum, when such information presumably can be accessed just as easily in this District as in the EDNY. Altice's corporate representative was unaware of any relevant information on those servers. Clarke Dep. at 89:8–17.

14 at 11–12.[8] Thus, with respect to such evidence, this District and EDNY are equally convenient.[9]



Altice also failed to consider the impact of ██████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████. *Supra* at 6–7. Altice also failed to mention ████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████. Clarke Dep.

186:15–187:8, 190:8–191:6. ████████████████████████████████████████████████

██████████████████████████████████████. *Id.* at 191:11–17. These sources of

evidence demonstrate that this factor disfavors transfer.

### 3. The Availability of the Compulsory Process Favors This District

There is no credible argument that the availability of compulsory process favors transfer. Altice tries to manufacture such an argument by citing a former employee, Robert Egan, who resides in New York. Mot. at 12 (citing Heberer Decl. ¶ 9). But Altice offers no evidence that Mr. Egan is likely to be a trial witness, that his deposition would be insufficient, or that he is unwilling to come to trial in either New York or Texas, as would be required for this factor. *Planned Parenthood*, 52 F.4th at 630–31 ("the availability of the compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify") (quotations and citations omitted). And ████████████████████████████████████████████████████

---

[8] Altice contends that "much of" Plaintiffs' evidence should already be collected and in the control of Plaintiffs and therefore "not count[]." *ACQIS LLC v. EMC Corp.*, 67 F. Supp. 3d 769 (E.D. Tex. 2014), cited twice by Altice, provides no support whatsoever for this proposition. Rather, the cited passage refers to "documents that have been moved to a particular venue in anticipation of litigation," which is not on point. *Id.* at 775. Nevertheless, there remain numerous sources of evidence, such as non-parties' proprietary source code or relevant communications that must still be collected and prepared for production.

[9] To the extent physical evidence comes into play, the parties and non-parties' documents are more conveniently located to this District. Allan Decl. ¶¶ 8, 10, 12, 25 & Ex. 7 at 11, Ex. 8 at 16, Ex. 10 at 13, Ex. 11 at 22, Ex. 14 at 12, Ex. 31–35; Mot. at 6 (citing Elkin Decl. ¶ 14).



■. Clarke Dep. at 148:21–150:22.

On the other hand, ████████████████████████████

████████████████████████████████████████████████

███████████████████. Clarke Dep. at 187:15–188:8; Allan Decl. ¶ 2 & Ex. 1 at 23,

App'x. A. ██████████████████████████████████████

██████████████████. Allan Decl. ¶ 2 & Ex. 1 at 19. These relevant witnesses

would be subject to the subpoena power in this District but not in EDNY.

The comparative availability of compulsory process disfavors transfer.

### 4.    Other Practical Considerations Favor This District

There are no other "practical considerations" that bear on the private interest factors, apart

from Altice's conclusory references to "judicial efficiency." Mot. at 13. Altice itself concedes this

factor is neutral. The only possible additional factor—cost—favors this District, because it will be

less expensive to travel to and try this case in Marshall than in New York. *ComCam v. Mobotix*,

2014 WL 4229711, at *3. This factor thus weighs against transfer.

### B.    The Public Interest Factors Heavily Favor This District

### 1.    This District Has A Strong Interest in this Case

There is a "local interest in having localized interests decided at home" particularly in

consideration of prospective jurors, who "ought not to be imposed upon" when they hail from a

"community which has no relation to the litigation." *Volkswagen I*, 371 F. 3d at 206. Altice has

actively fostered deep community ties in this District that relate to this litigation. The Court should

reject Altice's efforts to disavow those ties based on little more than the location of some of

Altice's executives. *See Realtime Adaptive Streaming LLC v. Amazon.com, Inc*., No. 6:17-CV-

00549-JRG, 2018 WL 4444097, at *8 (E.D. Tex. Sept. 5, 2018) (denying transfer to Amazon's

11

headquarters).

Altice has over 189,000 residential subscribers in this District and ███ in Texas. Mot. at 3 (citing Heberer Decl. ¶ 6); Allan Decl. ¶ 3 & Ex. 2; Clarke Dep. at 128:18–129:15. Texas is Altice's ███ state by volume of residential customer and revenue, amassing ███ in the last four years. Clarke Dep. at 134:21–135:3; Allan Decl. ¶¶ 3, 5 & Exs. 2, 4 at 45–47. Altice is listed (under its "Optimum" brand name) as a "major employer" in Tyler according to the Tyler Economic Development Council. Allan Decl. ¶ 32 & Exs. 55–56. It employs ███ ███ Allan Decl. ¶ 4 & Ex. 3 at 22–24. Altice has ███. *Id.* Altice also has 83 active Texas job listings on its website, including 28 in this District. Allan Decl. ¶ 33 & Exs. 57–58.

It is no surprise, then, that Altice has committed to spend $500 million on constructing network infrastructure in Texas and this District to reach more subscribers and enhance the services of existing subscribers, including a 100% fiber network and multigigabit broadband speeds. Allan Decl. ¶¶ 34–35 & Exs. 59–60, Ex. 61 at 3, Ex. 62 at 2; Clarke Dep. at 93:25–94:9. Nor is it surprising that ███ ███ ███. Allan Decl. ¶ 6 & Ex. 5; Clarke Dep. at 109:20–111:17, 122:20–123:20. Alongside these investments, Altice engages directly with local communities in Texas, ███ ███. Allan Decl. ¶ 34 & Ex. 59; Clarke Dep. at 115:16–116:4, 117:18–118:15. It is disingenuous, then, for Altice to suggest there is no local interest in this dispute, when Altice has a significant physical presence in this District and actively fosters local Texas relationships.

Altice insists that none of its operations in Texas "has anything to do with the business policies Plaintiffs claim caused them harm." Mot. at 14. That mischaracterizes Plaintiffs' case. The *harm* is most directly caused by the rampant piracy committed by the users of Altice's services, including in this District. Compl. ¶ 16. Altice enables and materially contributes to that harm by providing internet service to those infringers, even as they repeatedly violate Altice's purported "policies." And Altice invites more harm (to its own benefit) by expanding and enhancing its services without corresponding efforts to curb even the most notorious misconduct, including in its key growth market in Texas.

But the local interest runs beyond Altice's massive investment in Texas. During the claims period, █████████████████████████████████████████████████████ ████████████████████████████████████████████████████████. Clarke Dep. at 187:15–188:8; Allan Decl. ¶ 2 & Ex. 1 at 23, App'x. A. Even now, ████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████ Clarke Dep. at 193:2–196:17.

Texas also plays an integral role in Plaintiffs' businesses. For example, UMG employs ██ ██████ workers in Texas, while BMG employs █. Allan Decl. ¶¶ 8, 10 & Ex. 8 at 10, Ex. 11 at 11. Concord representatives frequently conduct business in Texas, including meeting and touring with artists and sponsoring headline events attended by Texans, and selling physical and digital products. Concord Dep. at 73:24–75:10. And as Governor Abbott has recognized, the music industry employed hundreds of thousands of Texans and generated more than $26 billion in economic activity statewide in 2022. Allan Decl. ¶ 37 & Ex. 64 (noting also that the Texas Music Office is the only state music office in the nation).

13

This District thus has a strong interest in this dispute, which is not outweighed by Altice's residence in EDNY. This factor is neutral.

### 2.    The Balance of Court Congestion Heavily Favors This District

Altice admits that this District's median time to trial is nearly half that of the EDNY (24.5 months versus 52.5 months). Mot. at 15 (citing Elkin Decl., Ex. 81). That means this case would likely be resolved fully two years sooner in this District compared to EDNY. And Altice acknowledges that the median time to disposition is roughly equivalent between the districts. *Id.* Where, as here, there is little difference between the respective times to disposition but a significant difference in times to trial, this factor weighs against transfer. *SynQor, Inc. v. Ericsson Inc.*, No. 2:11-CV-54-DF, 2012 WL 12903079, at *5 (E.D. Tex. Feb. 6, 2012) (recognizing time to disposition as less significant than time to trial); *see also N5 Techs., LLC v. Bank of Am., N.A.*, No. 2:12-CV-685-MHS-RSP, 2014 WL 558762, at *4 (E.D. Tex. Feb. 10, 2014); *Uniloc USA, Inc. v. Distinctive Dev. Ltd.*, 964 F. Supp. 2d 638, 651 (E.D. Tex. 2013). This District also maintains fewer pending cases per judgeship compared to EDNY, so a transfer would add to court congestion. *See* Mot. at 15 (citing Elkin Decl., Ex. 81). This factor weighs against transfer.

### 3.    The Familiarity of the Forum with Relevant Law Disfavors Transfer

This District has significant experience adjudicating complex intellectual property disputes compared to EDNY, so this District will be more familiar with the nuances of contributory, vicarious, and willful infringement central to this case. This District further has specific experience in copyright cases such as this one. This factor disfavors transfer.

### 4.    The "Conflict of Laws" Factor is Neutral

Plaintiffs do not anticipate this case will raise conflict of laws issues. This factor is neutral.

## IV.    CONCLUSION

Altice has not met its high burden to warrant transfer from Plaintiffs' chosen venue. On

14

balance, the forgoing factors favor this District or, at a minimum, remain neutral. None favors

transfer. Plaintiffs request that Altice's motion to transfer be denied.

Dated: May 5, 2023                           Respectfully submitted,

                                             */s/ Michael J. Allan*
                                             William E. Davis, III
                                             Texas State Bar No. 24047416
                                             bdavis@davisfirm.com
                                             Rudolph "Rudy" Fink IV
                                             Texas State Bar No. 24082997
                                             rfink@davisfirm.com
                                             THE DAVIS FIRM, PC
                                             213 N. Fredonia Street, Suite 230
                                             Longview, Texas 75601
                                             Telephone: (903) 230-9090
                                             Facsimile: (903) 230-9661

                                             Michael J. Allan
                                             John William "Bill" Toth
                                             Joseph F. Ecker
                                             Steptoe & Johnson LLP
                                             1330 Connecticut Ave. NW
                                             Washington, DC 20036
                                             (202) 429-3000
                                             (212) 506-3900
                                             mallan@steptoe.com
                                             btoth@steptoe.com
                                             jecker@steptoe.com

                                             Jamie L. Lucia
                                             Steptoe & Johnson LLP
                                             One Market Plaza
                                             Steuart Tower, 10th Floor, Suite 1070
                                             San Francisco, California 94105
                                             (415) 365-6711
                                             jlucia@steptoe.com

                                             *Counsel for Plaintiffs BMG Rights*
                                             *Management (US) LLC, UMG Recordings,*
                                             *Inc., Capitol Records, LLC, Concord Music*
                                             *Group, Inc., and Concord Bicycle Assets,*
                                             *LLC,*

15

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on May 5, 2023.

*/s/ Michael J. Allan*

