# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, CONCORD MUSIC GROUP, INC., and CONCORD BICYCLE ASSETS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ALTICE USA, INC., and CSC HOLDINGS, LLC, <br><br> Defendants. | CIVIL ACTION NO. 2:22-cv-00471-JRG <br><br> ORAL ARGUMENT REQUESTED |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO PRECLUDE
PLAINTIFFS FROM RELYING ON OPSEC NOTICE DATA
<u>TO ESTABLISH DIRECT INFRINGEMENT</u>**

Altice moved the Court to hold Plaintiffs to their express, unequivocal representation that they would *not* rely on OpSec notice data for purposes of establishing direct infringement, which Altice relied on to its detriment in significantly curtailing the discovery it sought from Plaintiffs and third parties to rebut infringement claims predicated on OpSec evidence. Plaintiffs concede that they reversed course after Altice relied on Plaintiffs' initial representation as to the scope of its case for nearly two months. That should end the inquiry.

The entirety of Plaintiffs' Opposition is an attempt to cast blame upon Altice for continuing to seek a narrow, circumscribed set of documents from OpSec that are unquestionably relevant to issues such as the reasonableness of Plaintiffs' decision to rely only on Rightscorp's system and notices, and the reliability and accuracy of Rightscorp's system compared to its competitors (like OpSec). This was perfectly logical in light of Plaintiffs' representation that even if they did not rely on OpSec data to establish direct infringement, they would use it for other purposes—and also entirely consistent with Altice's confirmation that it would not withdraw the subpoena to OpSec.

Plaintiffs' ensuing pledge not to rely on OpSec evidence to establish direct infringement was unequivocal—not contingent upon any agreement from Altice to forego any or all evidence relating to OpSec. Plaintiffs' *assumption* that "Altice would adjust its discovery demands with respect to OpSec-related information accordingly" was neither reasonable nor founded in any representation by Altice given Altice's express declination to withdraw the OpSec subpoena more than a week *before* Plaintiffs' initial representation and the fact that Altice never represented that it would abandon OpSec evidence entirely (and neither did Plaintiffs). Plaintiffs should be held to their unequivocal position months ago as to the scope of their direct infringement case.

A. **Altice Has Established Every Element Required for a Preclusion Order.**

Plaintiffs do not dispute that they made an express representation that they would not rely upon OpSec evidence to establish direct infringement on August 1, then withdrew that

representation on September 20. Nor do they dispute that Altice relied on the initial representation in their discovery negotiations. Plaintiffs dispute only whether Altice has been prejudiced by its reliance on Plaintiffs' representation. *See* Opp'n at 2. But even then, Plaintiffs do not dispute any of the ***facts*** that Altice put forth in its Motion establishing that prejudice—that it spent the intervening time between Plaintiffs' flip-flopping negotiating discovery requests and subpoenas relying on Plaintiffs' initial representation. Altice made a number of significant compromises in its negotiations with OpSec and Plaintiffs themselves. *See* Mot. at 4-6.

Instead, Plaintiffs merely note that Altice has "ample time to collect discovery to ***cure*** any supposed prejudice" because fact discovery does not close until January 30, 2024. Opp'n at 6-7. Setting aside that there are only eight weeks left in fact discovery, the prejudice Altice will suffer without a preclusion order is having to conduct two rounds of discovery negotiations with OpSec and Plaintiffs, as well as having to seek broader discovery from the RIAA and Audible Magic, in anticipation of Plaintiffs potentially obtaining and using the same information. Indeed, given the longstanding, close relationship between Plaintiffs and OpSec—whereby Plaintiffs via their agent, the RIAA, have contracted with OpSec for over a decade to detect infringements and send notices to ISPs relating to their copyrighted works—it is doubtful that Plaintiffs even need to subpoena OpSec for this data (if they do not already have it).

Altice's recent negotiations with OpSec clearly demonstrate that this prejudice cannot simply be cured by "re-negotiation." For example, OpSec has not produced a single document nor allowed a routine source code review—and refuses to produce OpSec notice data at all—parroting ***Plaintiffs' position*** that Altice is to "blame" for Plaintiffs' about-face. Supplemental Declaration of Michael S. Elkin, ¶ 2. Altice will shortly be filing a motion to compel OpSec to comply with its subpoena in the District of Colorado, requesting transfer to this Court. *Id.* But there may not be

time left in discovery for Altice to start over and conduct a fulsome review of OpSec's notice data and source code.

Plaintiffs' argument that Altice is responsible for its predicament is divorced from the undisputed facts. Plaintiffs first asked Altice if it would withdraw the OpSec subpoena in exchange for Plaintiffs agreeing not to rely on OpSec evidence to prove direct infringement. Dkt. 95-1 ("Elkin Decl."), ¶ 5. Plaintiffs then stated that even if they did not rely on OpSec evidence to prove direct infringement, they would rely on OpSec notices for other purposes, such as to rebut Altice's DMCA safe harbor defense. *Id*. Altice confirmed on July 24 that Altice could not agree to withdraw the OpSec subpoena. *Id*., ¶ 6 & Ex. 4. A week later, Plaintiffs unequivocally represented to Altice that they would not rely on OpSec evidence to prove direct infringement. *Id*., ¶ 7 & Ex. 5.

All of this is undisputed. But Plaintiffs now argue that they "expected Defendants would understand how irrelevant OpSec would become to the case and substantially streamline the OpSec related discovery." Opp'n at 1. But, as set forth in detail in Altice's Motion, Altice ***did*** streamline, making substantial concessions and compromises in its negotiations with OpSec and Plaintiffs based on Plaintiffs' initial representations. Mot. at 4-6; Elkin Decl., ¶¶ 8-10. Further, both parties staked out their positions months ago that OpSec would continue to have some relevance to this case even if Plaintiffs chose to rely only on Rightscorp notice data to establish direct infringement.[1] In any event, Altice informed Plaintiffs in July that it would not withdraw the OpSec subpoena and has never wavered from that position, so any "surprise" has been manufactured.

---

[1] Plaintiffs' claim that Altice is pursuing voluminous "OpSec evidence" from third parties is a fiction. Altice will not need to seek OpSec notice data from any third party if Plaintiffs are precluded from relying on it. And Plaintiffs' claim that Altice recently served four subpoenas that "are entirely OpSec focused," Opp'n at 2 & n.1, is untrue. Altice subpoenaed two companies for specific documents relating to their assessments of the functionality and reliability of OpSec's systems. Jill Lesser is the former executive director of the Center for Copyright Information that administered the Copyright Alert System. Matthew Mason is the former COO of BitTorrent.

3

### B. Granting Altice's Motion Will Substantially Streamline the Case.

Plaintiffs argue that the critical fact for the Court to consider is Altice's "concession" that if Plaintiffs rely only on Rightscorp notice data to establish direct infringement, then "detailed evidence from … OpSec relating to OpSec's alleged detection of infringement on Altice's network … will have diminished relevance to this case." Opp'n at 3 (quoting Mot. at 7). Altice not only "concedes" this, but reiterates it. It is indeed true that if Plaintiffs are held to their word, detailed evidence relating to the multi-step technical process of detecting files, matching them to a library of Plaintiffs' copyrighted works, and sending notices to Altice will certainly have less relevance in this case. That is precisely why Altice made compromises in its negotiations with OpSec and Plaintiffs not to seek such detailed evidence. And it is also why, if Plaintiffs are permitted to renege on their representation, that evidence will, at this late stage, become more central to the case.

Despite Plaintiffs' apparent agreement that granting this motion will serve judicial and party efficiency (Opp'n at 1), they claim that a "one-way" preclusion order would be prejudicial to Plaintiffs. But the only "prejudice" that Plaintiffs claim they would suffer is abiding by a non-specific "advisory opinion." Opp'n at 5. Altice merely asks that Plaintiffs be held to their ***own representation*** that they would not rely on OpSec evidence "for purposes of establishing direct infringement." Elkin Decl., Ex. 5. In any event, Altice's request for relief is narrow and specific, asking that Plaintiffs be precluded from relying on **OpSec notice data** (e.g., evidence of OpSec's alleged detection of files shared on Altice's network, matching of those files to a library of Plaintiffs' copyrighted works, and sending notices to Altice) for purposes of establishing that those infringements took place. Mot. at 1, 10. And if this Motion is granted, Altice will forego seeking OpSec notice data from OpSec or any other third-party. *Id*. at 9-10. Plaintiffs' concerns that cross-examining Altice's witnesses on other types of documents obtained from OpSec (for example, documents relating to the reliability of OpSec's system in general) would somehow be construed

4

as "establishing direct infringement" has no basis in reality.

### C. Altice's Preclusion Motion is Not a "Premature Motion *in Limine*."

Plaintiffs' argument that Altice's Motion amounts to a premature request for a pretrial ruling lacks merit. Altice brought this Motion to hold Plaintiffs to their own explicit representation and to avoid undue burden and prejudice to Altice in reopening discovery negotiations. By the time that Altice files motions *in limine*, it will have already been forced to expend all of those costs.[2] Finally, Plaintiffs' argument that Altice's request is premature because OpSec has not yet produced documents is not well-taken in light of Plaintiffs' apparent coordination with OpSec in objecting to Altice's subpoena.

## II.   CONCLUSION

Plaintiffs concede that they reversed course on their express commitment not to rely on OpSec evidence for purposes of proving direct infringement, and do not dispute with any facts or evidence that Altice relied on that express representation to its detriment in negotiating the scope of discovery with Plaintiffs, OpSec, and other third parties. Altice's requested relief will streamline—not expand—both discovery and trial in this case, and Plaintiffs' feared "prejudice" has no basis in fact as Altice will not pursue OpSec notice data if this Motion is granted. Far from a premature *in limine* ruling, what Altice seeks here is that Plaintiffs are held to their own unequivocal representation that shaped Altice's discovery strategy during a critical time.

For the reasons set forth above and in Altice's Motion, the Court should preclude Plaintiffs from relying on OpSec notice data for purposes of establishing direct infringement.

---

[2] Plaintiffs' argument that the *timing* of Altice's Motion supports a finding that it is a "premature motion *in limine*" lacks merit as Altice conferred with Plaintiffs one week after Plaintiffs changed their position and then filed this Motion within a reasonable time after that and taking into account Plaintiffs' new position that it was "always" their expectation that Altice would withdraw its OpSec subpoena. *See* Elkin Decl., ¶ 16. Plaintiffs' reference to a "lead/local counsel meet and confer" (Opp'n at 5) is irrelevant as that is required only for discovery motions. L.R. CV-7(h).

Dated: November 27, 2023

Wesley Hill
Texas State Bar No. 24032294
Claire Henry
Texas State Bar No. 24053063
Ward, Smith & Hill, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
(903) 757-6400
wh@wsfirm.com
claire@wsfirm.com

*Attorneys for Defendants Altice USA, Inc. and CSC Holdings, LLC*

Respectfully submitted,

*/s/ Michael S. Elkin*
Michael S. Elkin (*pro hac vice*)
Sean R. Anderson (*pro hac vice*)
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700
melkin@winston.com
sranderson@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
Winston & Strawn LLP
101 California Street, 35th Floor
San Francisco, CA 9411
(415) 591-1506
jgolinveaux@winston.com

**CERTIFICATE OF SERVICE**

The foregoing motion has been served on all counsel of record via email on November 27, 2023.

*/s/ Michael S. Elkin*

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

The undersigned certifies that, pursuant to Local Rule CV-5(a)(7), the foregoing instrument designated as confidential in accordance with the previously signed Protective Order (Dkt. 57) is authorized by the Court to be filed under seal.

*/s/ Michael S. Elkin*