██████████████████████████████████

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, CONCORD MUSIC GROUP, INC., and CONCORD BICYCLE ASSETS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ALTICE USA, INC., and CSC HOLDINGS, LLC,<br><br>Defendants. | CIVIL ACTION NO. 2:22-CV-471-JRG<br><br>████████████ |

**PLAINTIFFS' AND RIGHTSCORP'S OPPOSITION TO ALTICE USA, INC.'S AND CSC HOLDINGS, LLC'S MOTION TO COMPEL REGARDING RIGHTSCORP, INC.**
**(Dkt. No. 143)**

████████████████████████████████

███████████████████████████████████████████████████

On February 12, 2024, Rightscorp delivered to Altice ████████████████████████ ████████████████████████████████████████████████. For six weeks, Altice did nothing with this ██████████ On the day of the Rightscorp deposition, Altice stated that it was unable to examine the information ████████████████████████████████████ ████████████████████████████████████████████████.

First, as Rightscorp explained on *numerous* occasions, its ████████████████████ ██████████ Regardless, Altice and its counsel should not have needed instructions to open the files—Altice has produced datasets 10 times as large without instructions— and its counsel should know how to open the files. Second, and most importantly, Altice could not explain at the time, nor can they explain now, why they waited until the day of the Rightscorp deposition to bring this issue to Rightscorp's attention. There is simply no excuse for this delay, nor does Altice offer one.

Instead, Altice focuses on a March 18th Rightscorp production. But as Rightscorp explained, the March 18th production was, for the most part, a reproduction of the documents produced on February 12th. To the extent there was some disparity in the file size between the two productions, it appears likely to have been due to an error in Altice's own extraction of the data from the hard drive. Even so, Altice has not explained how any anomalies relating to file size deprived it of a fair opportunity to ask Rightscorp's representative about the details of the tables.

Had Altice been diligent in its review of the Rightscorp production, ***all*** of Altice's purported problems could have been addressed prior to the Rightscorp deposition. But, instead of alerting Rightscorp's counsel to Altice's concerns before Rightscorp's deposition, Altice's counsel waited until the middle of the deposition to raise them. Altice now seeks to use its Motion to slough off the blame for its lack of diligence and to save face, rather than to resolve any genuine dispute and to retake a deposition for which it was unprepared to take the first time.

1

███████████████████████████████████████████

Underscoring Altice's counsel's lack of diligence is its disregard of proper procedure for this motion. Without leave, Altice attached more than 300 pages of exhibits to its motion, although the Court's discovery order limits them to five. *See* Dkt. 26 ¶ 9(b). And Altice brought this motion directed at Rightscorp, which is not a party, rather than in the parallel proceeding related to its subpoena of Rightscorp.[1] If Altice's motion is not denied or stricken based on those procedural infirmities alone, it should be denied because it lacks merit.

Despite all this, Rightscorp and Plaintiffs have been diligently working with Altice to resolve the Parties' disputes. As of the filing of this Opposition, Rightscorp and Plaintiffs understand that Altice has been able to open the files it was not previously able to access and the Parties are working to address any additional questions Altice has on those files. Additionally, Rightscorp has agreed to produce Mr. Boswell for a 1.5 hour deposition and to ███████████ ████████████████████████████████████████████████████████████████████████████████. Rightscorp and Altice submit that this should resolve Altice's motion.

## I. ARGUMENT

### A. Background

Rightscorp maintains ██████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████ For example, Rightscorp's ███████████████████ ████████████████████████████████ Declaration of Bill Toth ("Toth Decl.") at ¶ 2. Its ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

---

[1] Case No. 2:23-mc-0009. In the interest of judicial economy, Rightscorp is willing to consent to collapse the portions of this motion directed at Rightscorp with those directed at Plaintiffs, noting, however, that Altice has misrepresented the record from the hearing before Judge Payne.

2

███████████████████████████████████████████████████████

████████████ *Id.* at ¶ 2. Another example is ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████.

    Rightscorp produced the data ███████████████ pertaining to Altice in July 2023 as a set of 17 .csv files (a kind of text file that represent collections of data with each value separated by commas) exported from that table,[2] along with the source code for the software Rightscorp used to detect infringement and generate the notices reflected in that table. Altice moved to compel information from Rightscorp (pursuant to a subpoena) in the fall, seeking technical documentation regarding the system's operation. At the hearing on that motion before Judge Payne, counsel for Rightscorp explained that the operation of Rightscorp's system was embodied in its source code, and that there were not technical documents describing it. Mot. Ex. G at 59–61. Counsel explained that Rightscorp would produce "an additional table"—████████████████—even though information from that table was already embedded in Rightscorp's infringement notices. *Id.* Counsel further explained that Rightscorp's "aggregate data files are so big they can't even be opened in Excel. It crashes." *Id.* at 21. Rightscorp produced the ███████████ table in January, promptly following that hearing, also as a set of .csv files. Toth Decl. ¶ 3.

    Altice was unsatisfied with this production and expressed confusion that a series of .csv files had been exported from a single database table, and demanded still more information about Rightscorp's databases. *Id.* Rightscorp explained that the databases at issue did not bear on the issues in the case, but nevertheless agreed to export the data from additional tables used to create the ████████████████ noting again those tables were massive, "amount[ing] to dozens of

---

[2] The RIGHTSCORP_ALT0008053206–RIGHTSCORP_ALT0008053222. .csv files are easy to parse with a simple computer program.

████████████████████████████████████

terabytes." *Id*. at ¶¶ 3–4. On February 12th, following an in-person meet-and-confer discussing the very issue of the scope of Rightscorp's data production, counsel for Rightscorp hand-delivered a hard drive to Altice containing the exports of the additional database tables. *Id*. at ¶¶ 5–7. To address Altice's complaints about the exported form of the ██████████████ Rightscorp produced a single .csv file for each table, and produced one file as a native database, ██████ ████████████████████████████████

Altice's insistence that Rightscorp's production of these tables is inconsistent with its representations before Judge Payne is not true. *See* Mot. at 1. The issue before Judge Payne was whether Rightscorp had additional documents regarding the structure and operation of the Rightscorp system. Rightscorp repeatedly explained that the technical operation of its system is embodied in its code, and that any relevant information in these tables is duplicative of information embedded in Rightscorp's infringement notices, which Altice already has. Rightscorp produced these data at Altice's insistence following the hearing before Judge Payne. Indeed, as indicated in a recent meet and confer at which Rightscorp provided guidance on how to interact with these files, Altice's counsel appears to now recognize that these data are not critical information related to Rightscorp's detection of infringement, contrary to Altice's suggestion, but rather redundant of the information Altice has long possessed. *Compare* Toth Decl. ¶ 11, *with* Mot. at 1.

In any case, following the production in February, Altice said nothing about ████████ ████████ other than to inquire about the metadata of audio files on the drive. Toth Decl. ¶ 8. On March 18th, Rightscorp made a minor production of additional documents (mostly emails).[3] As noted in the cover email, the production ████████████████████████████████████████████

---

[3] Throughout discovery, Altice made a habit of producing hundreds of documents from the custodial files of a witness on the eve of that witness's deposition. Toth Decl. ¶ 15.

4

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ on the February 12th hard drive. Mot., Ex. C. Not only did Altice fail to promptly look at the information produced on February 12th, it also failed to look at the information produced on March 18th. Indeed, Altice should have promptly informed Rightscorp of its inability to access the information produced on February 12th and on March 18th. Instead, Altice did nothing until March 22nd, the day of the Rightscorp deposition to notify Rightscorp that it was having trouble accessing this information.[4]

### B. Altice Is Not Entitled to Relief for Its Failure to Exercise Diligence Regarding Large Data Exports.

Altice's chief complaints surround Rightscorp's production of ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇ Altice grossly misrepresents the timing and nature of Rightscorp's production of its data, and incredulously professes ignorance as to how to examine that data. Nevertheless, Rightscorp's counsel have undertaken extensive efforts to identify tools that Altice can use to analyze the Rightscorp data—work that Altice's own counsel and experts should have done in February.

First, Altice should know how to examine large data files. Altice itself produced numerous database exports, including one ▇▇▇▇▇▇▇▇▇▇▇▇ that amounted to more than 300 gb—over ten times larger than the largest of Rightscorp's productions. Toth Decl. ¶ 14. Altice produced that data across more than seven thousand individual .csv files, rather than a single file, without instruction, requiring Plaintiffs' counsel to identify and use data analysis tools to conduct any meaningful analysis of the data.[5] *Id*. Based on Altice's facility with its own massive data productions and its silence after Rightscorp's February 12th and March 18th productions,

---

[4] The alleged disparity between the size of files produced in February versus March appears to have resulted from Altice's own errors extracting data from the drive. Toth Decl. ¶ 6. Rightscorp's counsel is working with Altice's counsel to assess the cause, but Altice's counsel indicated they weren't sure where the original drive was. *Id*.

[5] Altice also did not produce "instructions" for how to analyze its massive dataset, as it suggests Rightscorp should have. *See* Mot. at 3.

Rightscorp understood there to be no issues with accessing Rightcorp's productions.

Even accepting Altice's alleged technical issues at face value, a simple Google search reveals countless methods for extracting data from a large .csv file. *Id*. at ¶¶ 9–10. And of course, Rightscorp's counsel could have helped resolve these issues for Altice at any time in the six weeks before the deposition. But Altice did not reach out. *Id*. at ¶ 8.

Despite Rightscorp's concerns regarding the merits of Altice's arguments, Rightscorp's counsel has strived to resolve Altice's issues with opening the database tables, including by writing PowerShell commands to generate excerpts of the .csv files and identifying software tools that can be used to parse and analyze large .csv files, generating excerpts of the files, and participating in multiple meetings in which they provided detailed explanations of what is contained in these files. *Id*. at ¶¶ 9–12. Rightscorp has also offered to reproduce the files as a set of numerous .csv files that can be opened individually in Excel. *Id*. at 12. Rightscorp believes these efforts have mooted Plaintiffs' concerns regarding Rightscorp's document production.

Rightscorp also understands that Altice seeks additional deposition time to question Rightscorp on this data. Rightscorp submits, however, that there is no justification for Altice's request for a *half day* of additional deposition time. Altice's failure to access the tables before the March 22nd deposition is of Altice's own doing and it is not entitled to a do-over to correct for its prior failures. Altice's supplemental filing concerning Rightscorp's subsequent productions of additional audio files is also of no moment and does not warrant additional deposition time. Altice already questioned Mr. Boswell extensively about Rightscorp's efforts to collect audio files from a variety of sources; Altice has not identified anything different about these subsequent productions warranting additional questioning. In an effort to resolve this issue, Rightscorp has offered Mr. Boswell for another 1.5 hours of deposition time.

###   C.   Altice's Request for Still More Data Should be Denied.

Although Altice has failed to examine the mountain of data it already has, it continues to demand more. Altice asks that Rightscorp produce its "infractions table" with respect to four other ISPs. Mot. at 4–5. Altice contends it needs these data to purportedly characterize "Altice's relative contribution to an alleged copyright infringement compared to other ISPs is minimal." Mot. at 5. In other words, Altice intends to show that even if Altice tolerated and fostered significant copyright infringement by its own subscribers, so did other ISPs. So what? That other subscribers to other internet service providers *also* commit rampant piracy has no bearing on Altice's liability for its subscribers' infringement. Moreover, Plaintiffs are seeking statutory damages, which are calculated on a per-work basis, not actual damages. This appears to be yet another effort by Altice to point fingers at anyone other than itself, and Altice's motion should be denied.

Notwithstanding the data's irrelevance, Rightscorp understands that Altice is willing to limit its request to a sample of data ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Rightscorp has agreed to this request.

###   D.   Plaintiffs Have Already Produced All Factual Matter Pertaining to Corroboration of Rightscorp's Notices.

Altice seeks to require Plaintiffs "to immediately produce all documents and information regarding to its *post hoc* 'corroboration' of Rightscorp notices." Mot. at 5–7. But it is entirely unclear what Altice thinks needs to be produced. All of the factual information Plaintiffs' experts will rely on has been produced. This includes, for example, audio files, copyright registration information, revenue information, and Rightscorp's infringement notices and data (along with Altice's own data). Any tools or methodologies that Plaintiffs' experts will rely on will be timely disclosed along with the analysis in their expert reports. Plaintiffs do not intend to waive privilege concerning the preparation of those reports. There is nothing to compel.

Dated: April 9, 2024

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com
Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com
DAVIS FIRM, PC
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

Respectfully submitted,

*/s/ William E. Davis, III w/ permission Michael J. Allan*
Michael J. Allan
John M. Caracappa
Katherine D. Cappaert
John William "Bill" Toth
Joseph F. Ecker
Steptoe LLP
1330 Connecticut Ave. NW
Washington, DC 20036
(202) 429-3000
(212) 506-3900
mallan@steptoe.com
jcaracappa@steptoe.com
kcappaert@steptoe.com
btoth@steptoe.com
jecker@steptoe.com

Jamie L. Lucia
Steptoe LLP
One Market Plaza
Steuart Tower, 10th Floor, Suite 1070
San Francisco, California 94105
(415) 365-6711
jlucia@steptoe.com

John J. Byron
Steptoe LLP
227 West Monroe Street, Suite 4700
Chicago, IL 60606
(312) 577-1283
(312) 577-1370
jbyron@steptoe.com

*Counsel for Plaintiffs BMG Rights Management (US) LLC, UMG Recordings, Inc., Capitol Records, LLC, Concord Music Group, Inc., and Concord Bicycle Assets, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served this April 9, 2024 on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

*/s/ Michael J. Allan*
Michael J. Allan
